IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CLARKE, | : | |
| Plaintiff | : | CIVIL ACTION NO. 08-cv-690 |
| | : | |
| v. | : | |
| | : | |
| KRISTEN CLARKE, | : | |
| Defendant | : | |

MEMORANDUM

STENGEL, J.                                                                        December 10, 2008

Michael Clarke brought this action under the Hague Convention[1] for the return of his two children, Nathan, age 5, and Grace, age 2, from Berks County, Pennsylvania, to Sydney, Australia.[2] Kristen Clarke, his wife and their mother, a U.S. citizen and a resident of Australia since the 1990's, came to Pennsylvania with their children to visit her mother and chose not to return.

Mr. Clarke retained Fox Rothschild LLP in Philadelphia, specifically Judy Springer, Esq., a partner in that firm, on January 31, 2008. The Hague Convention petition was filed on February 14, 2008. Mrs. Clarke retained counsel who answered the petition. There were no substantive pre-trial motions. Both sides exchanged documents, expert reports, affidavits and other exhibits. When the question arose of whether the case should proceed in the Court of Common Pleas of Berks County

---

[1]Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89. The purpose of the Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State . . . ." Id. art. 1. It was implemented by the International Child Abduction Remedies Act, Pub. L. No. 100-300, 102 Stat. 437 (1988) (codified as amended at 42 U.S.C.A. §§ 11601–11611 (West 2008)).

[2]Nathan was five (5) years old as of the time of the hearing; he is six (6) now.

(where Mrs. Clarke's custody petition was pending) or in federal court, the parties submitted letter briefs in the interest of saving time. After a conference call with counsel, I determined that the case was properly in federal court. The parties did not engage in discovery beyond the exchange of documents. After a two and a half day hearing, I granted the petition on May 27, 2008, and ordered the return of the children to Australia. That decision was appealed to the Third Circuit. On December 5, 2008 the appeal was withdrawn by agreement of the parties.

Mr. Clarke filed a petition for counsel fees and expenses. Mrs. Clarke, through her new attorneys, has responded. Mr. Clarke is seeking to recover $163,505.89 in fees and expenses and that is the subject of this Memorandum.

Mr. Clarke has a right to recover counsel fees and expenses. Section 8 of the International Child Abduction Remedies Act (the Hague Convention) provides for an award of counsel fees for a prevailing petitioner. 42 U.S.C.A. § 11607(b)(3) (2008). If the court orders that a child is to be returned, then it "shall order the respondent to pay necessary expenses . . . unless the respondent establishes that such order would be clearly inappropriate." Id. The plain language of the statute creates the initial presumption that the appropriate fees must be paid. See Whallon v. Lynn, 356 F.3d 138 (1st Cir. 2004) ("The district court has the duty, under 42 U.S.C.A. § 11607(b)(3), to order the payment of necessary expenses and legal fees, subject to a broad caveat denoted by the words, 'clearly inappropriate.'"); see also Rydder v. Rydder, 49 F.3d 369 (8th Cir. 1995); see also Diabo v. Delisle, 500 F. Supp. 2d 159 (N.D.N.Y. 2007).

Michael Clarke certainly incurred attorneys' fees, but it is hard to believe that $163,505.89 in fees and expenses was "necessary." Whether the amount is

-2-

"reasonable" is another question. Mr. Clarke's attorneys have billed him for the services of five (5) attorneys for preparation and presentation of his case in a two and a half day hearing, research, numerous telephone conferences, the preparation and filing of a petition and a memorandum of law. There was no discovery, no significant motions and the legal and factual issues were not highly complicated. The hearing itself involved the testimony of Mr. Clarke, Mrs. Clarke, a psychologist testifying for Mrs. Clarke, a psychologist testifying for Mr. Clarke and the telephone testimony of two witnesses from Australia.

The bill from Fox Rothschild LLP contains some remarkable entries. Counsel is seeking $9,537.00 for "Audiovisual Specialists" and $11,915.89 in "Travel and Food Expenses." Most of the latter expenses (all but $200.92) were incurred by Mr. Clarke in his traveling to the United States from Australia two times.

The truly disturbing aspect of the bill is the $128,983.50 claimed for time spent on this case by the Fox Rothschild attorneys.[3] As "Lead Counsel," Judy Springer, Esquire billed 196.5 hours at $345.00 per hour. She was assisted by four (4) attorneys identified in the petition as "Supporting Counsel" who were billed at $340.00 per hour, $335.00 per hour, $235.00 per hour and $485.00 per hour respectively.[4] The Memorandum of Law in Support of Petitioner's Application for Attorney's (sic) Fees

---

[3]$128,983.50 represents the total amount for counsel fees. Fox Rothschild provided a "client courtesy reduction" of $15,898.25, decreasing the requested amount to $113,085.25. Even with the discount, the bill is way out of proportion to the complexity of the case.

[4]The $335.00 per hour attorney only billed .7 hours on this case and obviously did not affect the total fees in any material way.

Under 42 U.S.C. § 11607 provides no real discussion of why five (5) attorneys were necessary to present this case.  In fact, the Memorandum glosses over the question with the conclusory statement, ". . . Father's Supporting Counsel represented an integral and necessary part of this case, as each Supporting Counsel managed a particular aspect of Father's case." (Petitioner's Memorandum at pg. 8.)  We might add "excessive and overwrought" to "integral and necessary" as adjectives used to describe the "management" of this case.

David Rasner, Esq., the attorney who was billed at $485.00 per hour, was present in the courtroom but did not participate in the hearing and rarely, if at all, sat at counsel table. He appeared to be there as an observer. The court recognizes Mr. Rasner as a well-respected family law specialist but wonders why it was necessary for him to be present in the courtroom in a supporting capacity, given the abundance of support provided by the other attorneys.  If the "Lead Counsel" was not sufficiently experienced in Hague Convention litigation (despite her $345.00 an hour billing rate) and required mentoring, then his supervision or guidance ought not to have been billed at such a high rate, if it was to be billed in the first place.

This trial involved issues that were no more complicated than a garden variety custody case.  In fact, two of the three main elements of Mr. Clarke's case were not contested: there was no question that Mrs. Clarke wrongfully (i.e. without Mr. Clarke's consent) retained the children in Berks County when they should have been returned to Australia, and there was no question that Mr. Clarke had every right to seek their return. The only contested issue was whether the return of these children to Australia would result in harm to the older child, Nathan.  Despite its international flavor, this case was

essentially the typical "best interests of the child analysis" that is the hallmark of state court custody litigation.[5] One wonders why, in a straightforward case, where the credibility of the parents was not in serious dispute and the focus of the case was on the credibility and weight to be given to the experts (not exactly a novel theory), it was necessary for "Lead Counsel" to employ in excess of $60,000.00 worth of support.

There is no question that the services of Lead Counsel, and, perhaps, some reasonable support, were "necessary." My concern is with the "reasonableness" of these fees. I simply cannot accept or justify an attorneys' fee award of this size in a case of this nature.

Included in the Fox Rothschild bill is an "expense" of $13,959.22 for "Australian Counsel." Australian counsel did testify by telephone as a witness at trial as to the legal procedures in place in Australia (which could be accessed by both parents to resolve this custody issue) and no doubt provided some consultation to Philadelphia counsel in preparation for this hearing. The problem with the claim for fees by "Australian counsel" is that Mr. Clarke is represented by "Australian counsel" in a pending custody action and divorce action in New South Wales. Was this $13,959.22 for legal services? In this case? In Australia? Was it a witness fee? Was it a bill for expert testimony? Was it some combination? The bill submitted does not allow the court to differentiate

---

[5] The custody issue was not before the court in this Hague Convention case. The purpose of the Hague Convention petition is to return the children to their home, if doing so would not create a dangerous condition for either child. The custody case would then proceed in the children's home jurisdiction, in this case New South Wales, Australia.

between the time spent on this case and the time "Australian counsel" is spending on Mr. Clarke's domestic relations case in Australia.

What was "necessary" was one well-prepared attorney to represent Mr. Clarke in the Hague Convention hearing. The other attorneys may have been helpful, but Mrs. Clarke should not bear the cost of the excessive approach taken by Mr. Clarke's attorneys.

While the services of an attorney were certainly "necessary," we are required to consider whether the award of attorney's fees is "clearly inappropriate." See § 11607(b)(3). This requires a consideration of Mrs. Clarke's financial circumstances, and, to some extent, her motivation in creating the need for a Hague Convention petition (filed by Mr. Clarke) in the first place. Mrs. Clarke's decision to retain the children in Pennsylvania was not proper, and under the Hague Convention, Mr. Clarke was entitled to their return. But Mrs. Clarke acted in the belief that she was doing the right thing. Her belief that she was doing the right thing could have been affected by any number of factors including stress (which was well established at the hearing), the influence of family in Pennsylvania, a misinterpretation of her son Nathan's behavior and misplaced accusations against Mr. Clarke, to name a few. Although misguided, and subsequently encouraged by her mother and by the dubious therapeutic intervention of the psychologist, Dr. Hamilton, Kristen Clarke believed she was acting in the best interests of her son Nathan and, by extension, her daughter Grace. Nothing about the facts of this case calls for or even suggests a need for an award of counsel fees as a "sanction" against Mrs. Clarke.

Kristen Clarke's financial circumstances, as described at the hearing and in the memorandum submitted by her counsel, appear to be dire. She is not gainfully employed at the present time. She has a daughter (Grace) with special medical needs including speech and physical therapy. These services all come at considerable expense. While Nathan does not have the physical and medical needs of his sister, it appears that he has been receiving counseling and that the family's plan is for Nathan to remain in therapy. Mrs. Clarke's means of support through the entire time this litigation was pending and during her entire stay in the United States came from Mr. Clarke. At the time of the hearing, Mr. Clarke was providing for the medical treatment and living needs of his children and his wife. In addition, he was providing for the home that was available to the family in Sydney, Australia and was making payments to reserve the children's place with a daycare center. He was also seeing to their anticipated educational needs. In short, Mrs. Clarke received substantially all of her financial support from Mr. Clarke while she was living with her mother in Berks County, Pennsylvania. While she may have received some support from family, it is clear that Kristen Clarke was not earning money at any time relevant to this case. This is not to suggest she is unable to earn a living, only to point out that with the demands of her children and her choice to live in Pennsylvania, for a time, and not at her home in Sydney, Australia, she was unable to generate an income. It appears unlikely, given the child care needs of both Nathan and Grace and the expense of child care if she chooses to work, that Mrs. Clarke will have the ability to earn a substantial income at any time in the near future.

In the face of the extremely high counsel fees (and expenses) sought by Mr. Clarke and in the face of Mrs. Clarke's current financial situation, an award of fees and expenses anywhere close to the amount sought by Mr. Clarke may well be "clearly inappropriate."  A determination of an award of fees and expenses will involve a balancing between what was necessary for Michael Clarke and what is appropriate to assess against Kristen Clarke.  It is, in fact, practically impossible to determine an award of fees under 42 U.S.C. § 11607 given the lack of explanations for certain charges, the failure to show what fees were truly "necessary" and the profoundly unreasonable bill amassed by the Fox Rothschild Family Law Group.

Among the several approaches available for the court to discern a reasonable attorneys' fee is the lodestar analysis which appears to be favored by the Third Circuit. The lodestar analysis simply involves a calculation of the number of the hours reasonably spent in a case of this nature multiplied by a reasonable hourly rate.  For "lead counsel" to spend 196.5 hours to prepare and present a two and a half day case seems excessive and so the lodestar approach would require the court to determine a reasonable hourly rate and somehow set a reasonable number of hours for this work.

The court can look to this record for a factual basis on which to mold or amend the bill submitted by Fox Rothschild. Mr. Clarke's attorneys are in a better position to re-evaluate their bill and should, I believe, be given a chance to reflect on their charges in light of this Memorandum and revise their bill.  Mr. Clarke's attorneys will therefore be required to reconsider their statement for services rendered and for expenses and costs.  A revised (and reduced) statement shall be submitted to the court within seven (7) days.  The revised statement shall contain, or be accompanied by:

1) a description of the services rendered;

2) the identity of the attorney providing the services;

3) the hourly rate charged by the attorney;

4) a statement as to why the services rendered were necessary;

5) a description of the services for which counsel is seeking reimbursement as "expenses;"

6) a statement as to why the expense was necessary;

7) a copy of the fee agreement letter signed by Fox Rothschild and Michael Clarke;

8) if the bill contains charges for more than one attorney, an explanation as to why the services of two (or more) attorneys was necessary; and

9) an explanation of why the award of fees and expenses in favor of Mr. Clarke and against Mrs. Clarke is not "clearly inappropriate" in light of the uncontradicted evidence in this case that Mr. Clarke is Mrs. Clarke's current sole source of support.

The information required above may be provided to this court in a memorandum accompanying the revised (and reduced) statement of services rendered.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CLARKE, | : | |
| Plaintiff | : | CIVIL ACTION NO. 08-cv-690 |
| | : | |
| v. | : | |
| | : | |
| KRISTEN CLARKE, | : | |
| Defendant | : | |

ORDER

  **AND NOW**, this 10th day of December, 2008, consistent with the foregoing Memorandum, Petitioner Michael Clarke is hereby **ORDERED** to submit a revised Application for Attorneys' Fees under 42 U.S.C. § 11607 on or before **Wednesday, December 17, 2008**.  The revised application shall contain or be accompanied by:

 1) a description of the services rendered;

 2) the identity of the attorney providing the services;

 3) the hourly rate charged by the attorney;

 4) a statement as to why the services rendered were necessary;

 5) a description of each of its "expenses" for which counsel is seeking reimbursement;

 6) a statement as to why the expense was necessary;

 7) a copy of the fee agreement letter signed by Fox Rothschild and Michael Clarke;

 8) if the bill contains charges for more than one attorney, an explanation as to why the services of two (or more) attorneys was necessary; and

 9) an explanation of why the award of fees and expenses in favor of Mr. Clarke and against Mrs. Clarke is not "clearly inappropriate" in light of the uncontradicted evidence in this case that Mr. Clarke is Mrs. Clarke's current sole source of support.

The information required above may be provided to this court in a memorandum accompanying the revised (and reduced) statement of services rendered.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.
United States District Judge